RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0282P (6th Cir.)
File Name: 02a0282p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

MYRON BARLOW and ARLENE
BARLOW,
    _Petitioners-Appellants,_

    _v._

COMMISSIONER OF INTERNAL
REVENUE,
    _Respondent-Appellee._

No. 01-1161

On Appeal from the United States Tax Court.
Nos. 95-04651; 95-04652; 95-06393; 95-06394;
Howard A. Dawson, Jr., Tax Court Judge.

Argued: May 1, 2002

Decided and Filed: August 21, 2002

Before: SILER and CLAY, Circuit Judges;
OBERDORFER, District Judge.

_____

    [*]The Honorable Louis F. Oberdorfer, United States District Judge for
the District of Columbia, sitting by designation.

1

_____

**COUNSEL**

**ARGUED:** Neal Nusholtz, NOVECK & NUSHOLTZ, Bingham Farms, Michigan, for Appellants. Laurie Snyder, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Neal Nusholtz, NOVECK & NUSHOLTZ, Bingham Farms, Michigan, for Appellants. Laurie Snyder, Bruce R. Ellisen, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

_____

**OPINION**

_____

CLAY, Circuit Judge. Petitioners, Myron Barlow and his wife Arlene Barlow, appeal from the orders entered by the United States Tax Court on November 22, 2000, for Tax Court docket numbers 6393-95 and 6394-95, and from the orders entered on December 11, 2000, for Tax Court docket numbers 4651-95 and 4652-95, in these four tax cases consolidated for purposes of appeal. This case is one in a series of cases, involving these and other taxpayers, to appear before the Tax Court regarding limited partnership tax shelters that claimed tax benefits attributable to sham transactions with respect to machines designed to recycle plastic scrap material into pellets. On appeal, Petitioners challenge the Tax Court's ruling finding them liable for negligence and a tax-motivated interest penalty. For the reasons set forth below, we **AFFIRM** the Tax Court's orders.

**BACKGROUND**

**Procedural History**

Petitioners claimed losses on their income tax returns for 1982-1985, and investment and energy credits on their 1982 return, based upon an investment made in 1982 in a plastics

recycling limited partnership tax shelter known as Dickinson Recycling Associates ("Dickinson"). In September of 1988, Petitioners amended the returns in order to satisfy anticipated underpayments of tax attributable to the losses and credits they claimed in connection with the tax shelter. It is undisputed that the partnership transactions underlying the claimed tax benefits were shams, that the value of the plastic recycling machines was overstated for tax purposes, and that, as a result, until Petitioners filed the amended returns, they had underpaid their taxes for 1982-1985.

The Commissioner of Internal Revenue ("the Commissioner") issued Petitioners notices of deficiency asserting additions to tax for negligence for all four years (1982-1985), in the respective amounts of $4,829, $49, $22, and $25 (Internal Revenue Code ("IRC") § 6653(a)(1)), plus fifty percent of the interest due on the portions of the underpayments attributable to negligence (IRC § 6653(a)(2)), and an addition to tax for valuation overstatement (IRC § 6659) for 1982. The Commissioner also charged Petitioners $27,914 in interest on the 1982 underpayment, as computed at the increased interest rate mandated by IRC § 6621(c) for underpayments attributable to tax-motivated transactions. Petitioners paid the § 6621(c) interest before commencing these proceedings.

In the Tax Court, Petitioners disputed the additions to tax for negligence on factual grounds, and sought a refund of the § 6621(c) interest they had paid for 1982 on procedural grounds. Petitioners did not dispute that they were liable for the addition to tax under IRC § 6659 for 1982, nor did they dispute that the underpayment for 1982 was attributable to a tax-motivated transaction. Although the facts were largely stipulated, a trial was held with respect to the negligence issue. Two witnesses testified at trial, Petitioner Myron Barlow, and Fred Gordon, the promoter of the Dickinson tax shelter.

The Tax Court issued an opinion sustaining the Commissioner's position in all respects. The Tax Court

accordingly entered decisions finding that Petitioners were liable for all of the asserted additions to tax for the years 1982-1985, and denied their claims for a refund of the interest paid for 1982. This appeal ensued.

## Facts

In December of 1982, Myron Barlow (hereinafter "Barlow") invested $50,000 in the Dickinson tax shelter which was one of the limited partnership tax shelters that claimed tax benefits attributable to sham transactions involving machines designed to recycle plastic scrap material into pellets. Prior to 1982, Barlow received a bachelor's degree from Johns Hopkins University, a medical degree from the University of Michigan School of Medicine, and three years of specialized medical training in dermatology from Wayne State University. During the years at issue, Barlow practiced medicine as an employee of a professional corporation, earning salaries of $294,263 in 1982; $348,630 in 1983; $250,000 in 1984; and $356,590 in 1985. Prior to investing in the Dickinson tax shelter, Barlow had invested in a variety of property, including stocks and bonds, real estate, a partnership that invested in real estate, a coal mining company, and a communications system that he rented to a medical clinic.

Barlow was introduced to the Dickinson tax shelter in November of 1982 by Herbert Krickstein, a friend and medical colleague, and Fred Gordon, an attorney, while on a golf vacation in Florida. Gordon was actively engaged in promoting investments in Dickinson, and received a commission from Dickinson on each sale. After returning home from the golf trip in 1982, Barlow received a copy of Dickinson's private offering memorandum from Gordon in the mail, in which 18 units in Dickinson was offered at $50,000 each. The offering warned the potential investor in bold capital letters that "**THIS OFFERING INVOLVES A HIGH DEGREE OF RISK, See *CERTAIN BUSINESS RISKS and CERTAIN TAX RISKS AND CONSEQUENCES*.**" (J.A. at 124.) In addition, the offering

must show that the accountant had all the necessary information to make an informed decision." *See Zfass*, 118 F.3d at 188. Here, Petitioners have failed to show that Barlow acted reasonably or that Kabeck had all the information to make an informed decision. For example, the record indicates that Barlow was an educated man and a sophisticated investor, and yet he did not heed the warnings set forth in the offering memorandum, nor did he accept the advice of his long-time friend and advisor, attorney Philip Nusholtz. In addition, as the Tax Court found, Kabeck did not have the knowledge and expertise to advise Barlow inasmuch as Kabeck did not have any firsthand knowledge about the leasing transactions involved in this case, nor did he have any experience in the area of plastic recycling or in the area of investment-related advice in general. As a result, Petitioners have failed to meet their burden in demonstrating that Barlow was not negligent when he invested in the Dickinson offering. *See id.*

## CONCLUSION

For the above-stated reasons, we **AFFIRM** the Tax Court's orders.

prior experience in marketing recycling equipment, that there was no established market for the Sentinel recyclers, and that there was no assurance that market prices for virgin resin would remain at their then-current level.

Outside sources also warned Barlow not to invest in the Dickinson offering. Specifically, Philip Nusholtz, an attorney with whom Barlow had a long-standing professional relationship, and whose tax advice Barlow valued and trusted, advised Barlow not to invest in the Dickenson offering. Nusholtz refused to read the offering memorandum and advised Barlow not to invest in any offering made by promoter Fred Gordon.  Barlow invested $50,000 in the Dickinson offering despite these warnings and knowledge of the risky nature of the investment.  And, four months after making the investment, Barlow claimed the promised tax benefits on his 1982 tax returns, thereby reducing his tax liability for that year by over $96,000.

The Tax Court found that Barlow's primary motivation for investing in the Dickinson offering was to obtain these tax savings, and Barlow does not challenge the Tax Court's finding in this regard.  As a result, it is undisputed that Barlow invested in a sham transaction without the primary profit motivation, which in itself is enough to find Petitioners' claim on this issue to be without merit.  *See Howard v. Commissioner*, 931 F.2d 578, 582 (9th Cir. 1991) ("In a case . . . where the taxpayers have been found to have entered into sham transactions without a primary profit motivation, they have failed to meet their burden of showing due care.")

Barlow claims that he relied on the advice that he received from his accountant and tax return preparer, Gerald Kabeck, prior to investing in Dickinson, and that reliance on this professional advice serves as a basis for finding that he was not negligent.  Good faith reliance on a tax advisor professional concerning tax laws is a defense to negligence. *See United States v. Boyle*, 469 U.S. 241, 246 (1985); *Zfass v. Commissioner*, 118 F.3d 184, 188 (4th Cir. 1997). "However, that reliance must be reasonable and the taxpayer

provided that "AN INVESTMENT IN THE PARTNERSHIP INVOLVES A HIGH DEGREE OF BUSINESS AND TAX RISKS AND SHOULD, THEREFORE, BE CONSIDERED ONLY BY PERSONS WHO HAVE A SUBSTANTIAL NET WORTH AND SUBSTANTIAL PRESENT AND ANTICIPATED INCOME AND WHO CAN AFFORD TO LOSE ALL OF THEIR CASH INVESTMENT AND ALL OR A PORTION OF THEIR ANTICIPATED TAX BENEFITS." (J.A. at 125.)

The offering reported other business and tax risks such as a "substantial likelihood" of an Internal Revenue Service ("IRS") audit of the partnership and each individual partner; the partnership had no operating history; the limited partners had no control over the business and the business was dependent upon the general partner; and there was no established market for the recyclers, as well as other warnings.  (J.A. at 131-36.)  However, the offering also included as an attachment a copy of a favorable tax opinion prepared by the law firm of Boylan & Evans and addressed to Sam Winer, Dickinson's general partner.  In discussing the recyclers' value, upon which the amount of the investment and energy tax credits depended, Boyan & Evans did not proffer its own valuation, but referred to the report of one of the evaluators.  Boyan & Evans stated that their opinion as to the offering was for the general partner's "individual guidance" and that "no prospective purchaser is entitled to rely upon this letter." (J.A. at 187.)

The offering also included the opinions of two evaluators, both of whom owned interests in partnerships that leased the recyclers at issue.  One of the opinions was that of Stanley N. Ulanoff, professor of marketing at the City University of New York and the author of books on technical and marketing subjects.  Although Ulanoff concluded that the price for the recyclers was fair and reasonable, he did not cite that price in his report and appeared to be unaware of it.  The other opinion, made by Samuel D. Burstein, an associate professor of mathematics at New York University, did not purport to appraise the recyclers, but simply concluded that they would

be operationally reliable and capable of continuously recycling polyethylene.

Barlow "browsed" through the offering memorandum, but did not read it cover to cover. Rather, he consulted with Philip Nusholtz, an attorney with whom he had a long-standing professional relationship, and whose judgment he respected and advice he valued.[1]  Nusholtz also did not read the offering; however, he advised Barlow not to invest in any promotion marketed by Gordon, and to focus on more conservative investments.

Barlow then took the offering to his accountant and tax return preparer, Gerald Kabeck. Kabeck read through the offering and told Barlow that he thought that the investment was reasonable.  At that time, Kabeck had no specialized knowledge or experience in plastics materials or plastics recycling and no specialized knowledge in valuing plastics recycling machines such as those in question.  Barlow did not pay Kabeck for his advice.

In December of 1982, Barlow filled out and signed a subscription agreement and purchased one limited partnership unit (a 5.5% interest) in Dickinson for $50,000.  A section of the agreement entitled "Purchaser's Representative(s)" stated that "[t]he undersigned understands that said Representative[s] may be compensated (to the extent of 10% of the price of the Units purchased) out of the proceeds of the offering, and, accordingly, said Representative(s) may have an interest in seeing the Offering consummated." (J.A. at 237.) In signing the agreement, Barlow claims that he assumed that the purchaser's representative referred to in this section was Gordon.

Before signing the subscription agreement and investing in Dickinson, Barlow did not make any independent investigation of the fair market value of the recycler, nor did

---

[1] Philip Nusholtz was the father of Petitioners' counsel in the matter at hand, Neal Nusholtz.  (J.A. at 259.)

Commissioner's determination of negligence is presumed to be correct, and a taxpayer has the burden of showing that he was not negligent.  *Id.* (citing *Skeen v. Commissioner*, 864 F.2d 93, 96 (9th Cir. 1989)); *see also Illes v. Commissioner*, 982 F.2d 163, 166 (6th Cir. 1992).

The Commissioner argues that Petitioners failed to meet their burden of proof in the matter at hand.  The Commissioner notes that courts have found that a taxpayer is negligent if he puts his faith in a scheme that, on its face, offers improbably high tax advantages, without obtaining an objective, independent opinion on its validity.  According to the Commissioner, the Dickinson offering here was such a scheme, and Petitioners failed to obtain the independent assurance of validity before investing, thereby making them negligent.  We agree.

The offering memorandum revealed that Dickinson would acquire rights to four Sentinel recycling machines through an elaborate series of simultaneous paper transactions, and quoted an exorbitant price of $1,500,000 for each machine, for which there was no established market, while warning that the IRS might challenge that price as being in excess of fair market value.  Based upon the recited price, the offering memorandum also projected that in the initial year, each partner would receive tax savings almost double his investment in the partnership. In addition to these "too good to be true" returns on an investment, the offering memorandum also expressly warned potential investors as to the high degree of tax risk.  For example, the offering provided in bold capital letters, **"THIS OFFERING INVOLVES A HIGH DEGREE OF RISK"**; stated that "[a]n investment in the partnership involves a high degree of business and tax risks and should, therefore, be considered only by persons who . . . can afford to lose all of their cash investment and all or a portion of their anticipated tax benefits"; and also stated that there was a substantial likelihood of audit by the IRS.  (J.A. at 125, 135.)  The offering memorandum further warned that the partnerships had no prior operating history, that the general partner had no

matter at hand was prescribed by § 6601(a) – albeit at the rate set forth in § 6621(c) – the Commissioner was not required to issue a notice of deficiency with respect to the interest due on Petitioners' 1982 underpayment, and the assessment at issue was valid.

In summary, we conclude that because Petitioners are challenging the overpayment of § 6621(c) interest, the Tax Court had jurisdiction to hear the matter, *see Barton*, 97 T.C. at 554-55, and because Petitioners had a judicial forum available to them wherein they could challenge the overpayment (and in fact availed themselves of that forum), the Tax Court properly exercised jurisdiction over this case and Petitioners were not denied due process of law under the Fifth Amendment. *See Johnston*, 429 F.2d at 806.

## II. Whether the Tax Court Properly Determined Negligence on the Part of Petitioners.[2]

We review a Tax Court's factual findings regarding a determination of negligence for purposes of IRC § 6653 under a clearly erroneous standard. *See Pasternak v. Commissioner,* 990 F.2d 893, 902 (6th Cir. 1993).

During the years at issue, 1982-1985, section 6653(a)(1) provided for an addition to tax equal to 5% of any underpayment of tax if any part of the underpayment was due to negligence, and section 6653(a)(2) provided for a further addition to tax equal to 50% of the interest payable on the portion of the underpayment attributable to such negligence. *See Pasternak*, 990 F.2d at 902. For purposes of section 6653, "negligence" is defined as "'lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances.'" *Id.* (quoting *Leuhsler v. Commissioner*, 963 F.2d 907, 910 (6th Cir. 1992)). The

---

[2]Section 6653 was repealed by the Omnibus Budget Reconciliation Act of 1989, effective for returns due after 1989. Negligence of the type at issue here is now one component of the accuracy-related penalty found in Section 6662. *See* 26 U.S.C § 6662(b)(1).

he seek the advice of any expert in the plastics industry. Instead, Barlow was influenced to sign the agreement because he assumed that Krickstein and other medical colleagues were investing in Dickinson. Barlow, however, did not have any specific conversations with his colleagues about either Dickinson or plastics recycling before making the investment. Barlow did not believe, nor is there any evidence in the record to suggest, that Barlow's colleagues had any knowledge in plastics recycling; Barlow himself did not have any such knowledge. However, Barlow did know at the time of signing the agreement that he would receive immediate tax benefits in excess of his $50,000 investment.

Based on his initial and only investment of $50,000 in Dickinson, Barlow claimed on his 1982 tax return investment and energy credits of $77,001, which were promised in the offering, and a loss of $39,155. These claims reduced Petitioners' tax liability by $96,583, an amount that exceeded his investment by almost two to one. In addition, Barlow claimed partnership losses on Petitioners' returns for 1983 through 1985 in the respective amounts of $1,961, $866, and $1,014. Barlow never made a profit in any year from his investment in Dickinson.

Sometime in the mid-1980s, Barlow became concerned about his participation in Dickinson. In September of 1988, Barlow amended his returns for 1982 through 1985 in order to satisfy anticipated underpayments of tax attributable to the Dickinson investment.

Dickinson was a so-called "TEFRA" partnership subject to the unified partnership audit and litigation procedures set forth in IRC §§ 6221-6233. On May 15, 1989, the Commissioner mailed a Notice of Final Partnership Administrative Adjustment ("FPAA") to Sam Winer, the tax matters partner of the Dickinson partnership, for each of the taxable years 1982-1985. A copy of each FPAA was also mailed to Barlow.

The FPAAs advised Barlow of adjustments that the Commissioner proposed to make to the partnership returns

filed by Dickinson. Specifically, the FPAAs disallowed deductions and credits claimed by Dickinson in connection with its plastics recycling activities for 1982 through 1985. On June 12, 1989, Sam Winer petitioned the Tax Court with respect to the FPAA, commencing the case of *Dickinson Recycling Associates v. Commissioner*. While that case was pending, the Tax Court, in 1992, decided that the plastics recycling transaction involved in *Provizer v. Commissioner,* 63 T.C. 2531 (1992) were shams, and this Court affirmed in an unpublished decision. *See* 996 F.2d 1216 (6th Cir. 1993). Winer, who was also the tax matters partner of the partnership involved in *Provizer*, conceded in *Dickinson* that the Commissioner had correctly disallowed all items of income, loss, and credit, and that the recyclers were overvalued. Accordingly, on February 23, 1994, the Tax Court entered its decision in *Dickinson* sustaining the Commissioner's FPAA determinations for 1982-85.

On November 18, 1994, after the Tax Court's decision in the *Dickinson* partnership-level proceeding became final, the Commissioner mailed a letter to Petitioners in connection with the 1982 tax year, advising them that 1) their 1982 amended return had been accepted as filed; 2) their $96,583 underpayment was attributable to a tax-motivated transaction; and 3) as a result, IRC § 6621(c) interest was applicable. Section 6621(c) provides for an increased rate of interest with respect to underpayments attributable to a tax-motivated transaction. *See* 26 U.S.C. § 6621(c). The Commissioner notified Petitioners on December 12, 1994, that the amount of interest assessed against them under § 6621(c) was $27,914. Petitioners paid the interest later that month.

Thereafter, in March of 1995, the Commissioner sent Petitioners notices of deficiencies for each of the years 1982-1985, determining that Petitioners were liable for additions to tax for negligence. The Commissioner also determined that Petitioners were liable for another addition to tax for 1982 for overstating the value of the recycling machines. Petitioners took their case to the Tax Court, challenging only the additions to tax for negligence and the § 6621(c) interest for

determine petitioners' liability for increased interest under section 6621(c).

*Barton*, 97 T.C. at 554-55 (footnotes and citation omitted).

In the matter at hand, Petitioners argue that, *Barton* aside, because there is a lack of a pre-payment forum in which they may challenge the overpayment of § 6621(c) interest, their due process rights under the Fifth Amendment have been violated. The Tax Court rejected Petitioner's due process argument. Citing *Phillips v. Commissioner*, 283 U.S. 589, 595 (1931) and *Johnston v. Commissioner*, 429 F.2d 804, 806 (6th Cir. 1970), the Tax Court held that the law is well settled that the availability to a taxpayer of a post-payment judicial forum in which to obtain a determination of his tax obligations is sufficient to satisfy due process requirements. (J.A. at 282-84.) We agree with the Tax Court and opine that because Petitioners had available to them judicial forums wherein they could seek redetermination of the alleged overpayments, and where Petitioners have in fact availed themselves of such forums, they have received all the process to which they are entitled. *See Johnston*, 429 F.2d at 806. We conclude that this is particularly so where Petitioners did not dispute that their underpayment was attributable to tax-motivated transactions, nor did they dispute the Commissioner's calculation of the amount owing.

We further conclude that Petitioners' argument that the interest assessment is void because the Commissioner did not issue a notice of deficiency with respect to the disputed interest before assessing it, is likewise without merit. Section 6601(e)(1) mandates that interest prescribed by section 6601, "shall be . . . assessed, collected, and paid in the same manner as taxes," and is treated as a tax "except [for purposes of] subchapter B of chapter 63, relating to deficiency procedures." 26 U.S.C. § 6601(e)(1). Accordingly, this provision authorizes the Commissioner to assess and collect the interest prescribed by § 6601(a) on an underpayment without first issuing a notice of deficiency asserting the taxpayer's liability for the interest. Because the issue in the

applies because the deficiency before the Court is not a substantial underpayment attributable to tax-motivated transactions." *Id.* at 216-17.

About one year later, in *Barton v. Commissioner*, 97 T.C. 548 (1991), the Tax Court carved out a narrow exception to the rule expounded in *White*. In *Barton*, the Tax Court held that it had jurisdiction to consider a challenge to a § 6621(c) interest assessment brought by a taxpayer-partner with respect to his own tax liability as a result of a partnership-level proceeding if the taxpayer-petitioner had paid the interest and the Tax Court otherwise had jurisdiction over the year involved. *Id.* at 551-53. The Tax Court reasoned that once the interest had been paid, it could be considered an overpayment, and the Tax Court had jurisdiction to determine whether there was an overpayment pursuant to §6512(b). *Id.* The Tax Court distinguished *White* on the basis that the issue there did not involve an overpayment, opining as follows:

> Respondent [Commissioner] argues that since this Court does not have jurisdiction over section 6621(c) interest as a "deficiency," we cannot have jurisdiction over such interest as an "overpayment." Respondent's only authority for this proposition is *White v. Commissioner*, *supra*. However, as explained above, *White* held that section 6601(e) prohibits the treatment of interest as tax for purposes of our deficiency jurisdiction. No such restriction exists with respect to our jurisdiction to determine an overpayment. Likewise, our holding in *White* that we had no jurisdiction pursuant to section 6621(c)(4), because the section 6621(c) interest in *White* was not based on a deficiency over which the Court had jurisdiction, was predicated on a reading of the provisions of section 6621(c)(4). As previously discussed, the provisions governing overpayment jurisdiction lead to a different result.
>
> Accordingly, we hold that in the exercise of our jurisdiction to determine whether an overpayment exists and the amount of any such overpayment, we may

1982. Trial was held in connection with the negligence issue, wherein two witnesses testified. Barlow was one of the witnesses to testify, stating that he received advice about investing in Dickinson, and Gordon testified as to his role in promoting the Dickinson investment. With respect to the § 6621(c) issue, Barlow did not dispute that the underpayment for 1982 was attributable to a tax-motivated transaction, but, instead, claimed that because no court would have jurisdiction to review his liability for the interest before it was paid, the imposition of the § 6621(c) interest violated due process requirements of the Fifth Amendment.

The Tax Court issued an opinion upholding the Commissioner. With respect to the negligence additions, the Tax Court opined that in light of various signs indicating that the leasing transactions were invalid and that the recycling machines were overvalued, a reasonably prudent person with Barlow's education and investment experience would have made an independent investigation into the validity of the investment, which Barlow failed to do. With respect to the § 6621(c) interest issue, the Tax Court recognized that in cases such as this, where tax-motivated interest is assessed on an underpayment that is attributable to a partnership transaction that is tax-motivated, a prepayment judicial determination as to the amount of the taxpayer's liability for such interest is unavailable to the taxpayer. The Tax Court held that this fact did not violate due process inasmuch as there were judicial forums, including the Tax Court, in which Petitioners could seek judicial review of this assessment after it had been paid, and Petitioners have availed themselves of the forums.

## DISCUSSION

### I. Whether the Tax Court Acted Without Jurisdiction in Finding Statutory and Constitutional Authority for the Assessment of Interest under 1954 IRC § 6621.

This Court reviews *de novo* the Tax Court's legal conclusions made based upon its findings of fact. *See Smith v. Commissioner*, 937 F.2d 1089, 1096 (6th Cir. 1991).

Petitioners argue that not all tax assessments may be made without notice and opportunity for a hearing, and claim that the denial of a pre-assessment hearing denied them due process. Petitioners also make several circular arguments claiming such things as inconsistencies in the tax code regarding Tax Court jurisdiction, and that the legislative history of § 6621(a) suggests that the tax-motivated interest penalty was intended to be part of Tax Court proceedings when, in 1984, Congress instructed the Tax Court to issue various penalties, including § 6621(c) to reduce its enormous workload due to tax shelters. Petitioners suggest, "[h]ow would the Tax Court use the tax motivated interest penalty to lighten its docket if it was not intended to have jurisdiction over it in the first place? The greatest likelihood is that if Congress had intended assessments of tax motivated interest to be done without the benefit of notice of deficiency, it would have done so directly, as it had done on previous occasions." Petitioners conclude that "[i]f the tax motivated interest penalty is not interest and subject to Tax Court jurisdiction under IRC § 6621(c)(4), then the assessment has been made without specific statutory authority. Such assessments are void as a denial of due process." *See* Petitioners' Brief on Appeal at 16.

The Commissioner argues that Petitioners' due process argument based upon the Tax Court's jurisdiction – or lack thereof – to review the imposition of interest at the rate set forth in IRC § 6621(c) is without merit. The Commissioner maintains that pursuant to IRC §§ 6213 and 7442, the Tax Court has jurisdiction to redetermine a "deficiency," as that term is defined in § 6211. The Commissioner further maintains that where the Tax Court has deficiency jurisdiction over a particular tax year, then pursuant to IRC § 6512(b), the Tax Court has jurisdiction to review a taxpayer's claim that there has been an overpayment with respect to that year. And although a taxpayer must first pay the amount in dispute, he may contest his tax liability by way of a refund suit in the appropriate district court or in the Court of Federal Claims under 28 U.S.C. §§ 1346(a)(1) & 1491(a)(1). We agree with the Commissioner's argument in all respects.

In *White v. Commissioner*, 95 T.C. 209, 210 (1990), the Commissioner issued a notice of deficiency to the petitioners after a partnership-level proceeding was completed determining that the petitioners were liable for additional interest under IRC § 6621(c), as well as additions to tax under IRC §§ 6651(a)(1), 6653(a)(1), 6653(a)(2) and 6659. The petitioners filed a petition for redetermination, and the Commissioner filed a motion to dismiss for lack of jurisdiction as to the petitioner's claims regarding liability for interest under § 6621(c). *Id.* The Tax Court examined its statutory grant of jurisdiction to review matters regarding the imposition of § 6621(c) interest on an underpayment attributable to a partnership transaction when the matter is brought by an individual taxpayer-partner. *Id.* at 211-13. The Tax Court held that it had no jurisdiction to review the matter because under IRC § 6621(a), 6230(a), and 6601(e)(1), interest computed at the increased rate prescribed by § 6621(c) does not constitute a "deficiency" within the meaning of section 6621. *Id.* at 213-14. The Tax Court reasoned that, in general, a partnership's items of income, deduction, loss, and credit are determined at the partnership level, and the Tax Court has jurisdiction to review the Commissioner's determinations with respect to such matters in a partnership-level proceeding brought by the tax matters partner under IRC § 6626(a). In addition, the Tax Court found that it had jurisdiction to determine any "deficiency" attributable to affected items that require partner-level determinations brought by a taxpayer-partner with respect to his own tax liability pursuant to IRC §§ 6230(a)(2)(A) and 6231(a)(5). The court opined that "deficiency" as defined by § 6211(a), is the amount by which the tax imposed exceeds the amount paid. The Tax Court noted, however, that IRC § 6601(e)(1) specifically excludes § 6601(a) interest from the definition of tax for purposes of deficiency proceedings. *Id.* The Tax Court therefore determined that the interest due was not a "deficiency," and as a result the Tax Court did not have jurisdiction to redetermine the assessed amount. *Id.* at 213-17. Specifically, the Tax Court opined that "this Court does not have jurisdiction under section 6621(c)(4) in the setting presented in this case to determine whether additional interest