# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-1672

_____

| | | |
|---|---|---|
| Marilynn K. Hammond, M.D., | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| Northland Counseling Center, Inc.; | * | District of Minnesota |
| Greg Walker, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: December 13, 1999

Filed: July 17, 2000

_____

Before WOLLMAN, Chief Judge, McMILLIAN, Circuit Judge, and BATTEY,[1] District Judge.

_____

McMILLIAN, Circuit Judge.

Dr. Marilynn K. Hammond appeals from a final order entered in the United States District Court for the District of Minnesota granting summary judgment in favor of Northland Counseling Center, Inc. ("Northland"), on her claim pursuant to the

_____

[1] The Honorable Richard H. Battey, United States District Judge for the District of South Dakota, sitting by designation.

whistleblower provision of the False Claims Act, 31 U.S.C. § 3730(h), and dismissing her remaining pendent state claims without prejudice. See Hammond v. Northland Counseling Ctr., Inc., No. 5-96-353 (D. Minn. Jan. 15, 1999) (summary judgment order) (hereinafter "slip op.").[2] For reversal, Hammond argues that summary judgment was improper because there was a genuine issue of material fact as to whether she was entitled to damages or other relief under the False Claims Act. For the reasons discussed below, we reverse the district court's order and remand for further proceedings consistent with this opinion.

## Jurisdiction

Jurisdiction in the district court was proper based upon 28 U.S.C. §§ 1331 and 1367. Jurisdiction in the court of appeals is proper based upon 28 U.S.C. § 1291. The notice of appeal was timely filed pursuant to Fed. R. App. P. 4(a).

## Background

The following statement of facts is drawn from the district court order and the record on appeal. Hammond, a Minnesota board-certified psychiatrist, was employed as Medical Director of Northland from October 1994 to September 1996. In January 1996, Hammond became concerned that Northland was improperly billing day

---

[2]Hammond also argues that the district court abused its discretion in denying her leave to amend her complaint to include a claim for punitive damages. See Hammond v. Northland Counseling Ctr., Inc., No. 5-96-353 (D. Minn. Apr. 23, 1998) (order). Notably, Hammond's notice of appeal did not specifically designate this order as being appealed; the notice simply stated that Hammond appealed the aforementioned summary judgment order. Even if this matter were properly on appeal before this court, we would find Hammond's arguments to be without merit.

treatment programming to Medicare[3] as a partial hospitalization program, thereby yielding a higher level of reimbursement for Northland.[4] Hammond contends that she repeatedly expressed concern about the propriety of these billings to Northland officials, including Greg Walker, Chief Executive Officer of Northland. Hammond asserts that, despite her efforts, Northland's billing practices were not corrected.

On April 1, 1996, after purportedly conducting her own inquiries into the billing practices of other local mental health facilities to determine if Northland's billings were in compliance with Medicare requirements, Hammond rescinded her authorization for Northland to bill partial hospitalization expenses under her license. See Appellant's Appendix at 17-18 (Hammond affidavit); id. at 26-29 (letter from Hammond to Walker). Hammond then scheduled a meeting for April 12, 1996, with officials from the United States Department of Health and Human Services ("HHS"), so that Hammond could report her concerns about Northland's allegedly irregular billing

---

[3]The Medicare Act, 42 U.S.C. §§ 1395-1395ccc, creates a system of comprehensive health insurance for the disabled and the elderly. Funded by federal employment taxes, Medicare reimburses hospitals and skilled nursing facilities for the costs of providing hospital and post-hospital care to program beneficiaries. See 42 U.S.C. §§ 1395d(a), 1395f. Administration of Medicare falls within the purview of the Health Care Financing Administration, a federal agency within the U.S. Department of Health and Human Services.

[4]Without citing statutory or regulatory authority, Hammond asserts that Medicare has implemented a Partial Hospitalization Program "which allows for a higher level of reimbursement for certain patients who are acutely ill, and are in the program in lieu of either admission to an inpatient hospital or a continued inpatient course of treatment"; that "Medicare requires that mental health services be provided through a comprehensive, structured program that uses a multi-disciplinary team to provide coordinated services within an individual treatment plan"; and that "[t]he regulations also require that the services be ordered by and rendered under the personal supervision of a physician who is treating the patient." Appellant's Appendix at 43 (Amended Complaint, ¶ 14).

-3-

practices. On April 11, 1996, Walker met with Hammond and allegedly told her that she had no right or authority to present her concerns to HHS officials. See id. at 44-45 (Amended Complaint, ¶ 20). Nevertheless, Hammond met with the HHS officials as scheduled. She notified Walker and other Northland employees that the meeting had taken place and claimed that the federal officials had said they would investigate the matter and contact her in the future. See id. at 45.

On May 29, 1996, Walker notified Hammond, in compliance with the notice provision of Hammond's employment contract, that Northland did not intend to renew her year-to-year contract when it expired on September 30, 1996. See Appellee's Appendix at 22 (letter from Walker to Hammond). Walker allegedly told her that he did not know whether Northland would be able to support the services of a psychiatrist, now that HHS had been notified of the alleged billing irregularities. See Appellant's Appendix at 20 (Hammond affidavit).

During the summer of 1996, Hammond continued to meet with representatives of HHS, as well as the Federal Bureau of Investigation and the United States Attorney for the District of Minnesota, regarding her allegations of Medicare fraud. Hammond purportedly kept Walker and other Northland employees informed of her activities in this regard. During this same period of time, Hammond claims that she was virtually excluded from Northland's administration, that she no longer received internal memoranda, and that she was no longer authorized to attend continuing medical education seminars. See id. at 49 (Amended Complaint, ¶ 34).

At 5:10 p.m. on September 18, 1996, Walker notified Hammond by memorandum that her position at Northland was terminated as of 5:30 p.m. that day. Walker's memorandum allegedly stated in part: "After 5:30 p.m. today your presence on the Northland premises is not allowed and we will take whatever action is necessary in order to remove you from the property should you trespass." Id. at 49-50 (Amended Complaint, ¶ 38). Although she had scheduled 25 patients for mental health care

services the following day (in addition to a full schedule for the remainder of the month), Hammond was forced to vacate her work area immediately and to meet with her patients the next day in the hallways and auditorium of the nearby Itasca Medical Center ("IMC"). See id. at 49-50 (Amended Complaint, ¶¶ 39-40).

Hammond became the new Medical Director of IMC's Department of Behavioral Health effective October 1, 1996. See id. at 50 (Amended Complaint, ¶ 40). However, IMC paid Hammond retroactively to September 19, 1996, see Hammond deposition, vol. III, at 95, and provided her with salary and benefits equal to or greater than those which she received from Northland. Hammond worked at IMC for more than a year until her department closed in mid-November 1997. See id., vol. III, at 49. Hammond and her family subsequently moved out of state. See id., vol. III, at 117.

Hammond further claims that, both before and after her termination from Northland, Walker and other Northland officials engaged in a campaign of character assassination against her. Among other things, Hammond alleges that Walker and other Northland officials encouraged patients and mental health advocacy groups to file unfounded complaints against Hammond. See id. at 50 (Amended Complaint, ¶ 42).

On December 5, 1996, Hammond commenced this action against Walker and Northland. As amended on April 30, 1997, Hammond's complaint included a federal claim for violation of the whistleblower provision of the False Claims Act (FCA), 31 U.S.C. § 3730(h),[5] as well as state law claims of defamation, tortious interference

---

[5]31 U.S.C. § 3730(h) provides:

> Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for, initiation of,

with a business relationship, breach of contract, and violation of the Minnesota Whistleblower Act, Minn. Stat. § 181.932. On August 4, 1997, the district court granted a motion to dismiss the FCA claim with regard to Walker. Northland subsequently moved for summary judgment on the claims remaining against it.

On January 15, 1999, the district court granted summary judgment in favor of Northland on the FCA claim and dismissed the remaining pendent state claims against Northland and Walker without prejudice. Initially concluding that damages were an essential element of an FCA whistleblower claim, see slip op. at 3-4, the district court determined that Hammond had failed to generate a genuine issue of material fact as to whether she was entitled to any relief under the FCA. See id. at 9-10. As stated above, the district court had previously determined that Hammond could not seek punitive damages under the FCA. See supra note 2 (citing district court order affirming magistrate judge's order denying Hammond leave to amend her complaint to include claim for punitive damages). The district court reasoned that, based on the undisputed facts, no compensatory remedies were available to Hammond under the FCA because: (1) reinstatement was not an appropriate remedy in the instant case; (2) "2 times the amount of back pay" would result in a net pecuniary loss of zero for Hammond, given that her mitigating pay from IMC wholly canceled out lost wages from Northland; (3) interest on back pay was accordingly not applicable; and (4) damages for emotional distress were not warranted. See slip op. at 5-10. This appeal followed.

---

testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole. Such relief shall include reinstatement with the same seniority status such employee would have had but for the discrimination, 2 times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees. An employee may bring an action in the appropriate district court of the United States for the relief provided in this subsection.

## Discussion

We review decisions to grant summary judgment *de novo*, applying the same standards as did the district court, see Wooten v. Farmland Foods, 58 F.3d 382, 385 (8th Cir. 1995), and affirming only when no genuine issue of material fact remains and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (Celotex); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). We view all evidence in the light most favorable to the non-moving party, drawing all inferences most favorable to that party. See Burnham v. Ianni, 119 F.3d 668, 673 (8th Cir. 1997) (en banc). However, summary judgment is proper if "the nonmoving party has failed to make a sufficient showing on an essential element of her [or his] case with respect to which she [or he] has the burden of proof." Celotex, 477 U.S. at 323.

Double back pay

Hammond contends that there is a genuine issue of material fact as to whether she proved damages as an essential element of her federal whistleblower claim against Northland and that summary judgment in favor of Northland was therefore improper.[6]

---

[6]Noting that § 3730(h) does not explicitly mandate proof of damages as an essential element of a whistleblower's claim, the district court assumed that damages must be established, in light of statutory requirements for the government. See slip op. at 3-4 & n.1 (citing 31 U.S.C. § 3731(c) ("In any action brought under section 3730, the United States shall be required to prove all essential elements of the cause of action, including damages, by a preponderance of the evidence.")). Although we do not necessarily agree with such an analysis, we assume for the purposes of this case only that such proof is required, given Hammond's concession at oral argument that damages are an essential element of her claim. We also assume for the purposes of this appeal that Hammond has generated a genuine issue of material fact as to all other essential elements of her claim under 31 U.S.C. § 3730(h).

Hammond initially argues that the FCA requires doubling of back pay prior to any consideration of mitigation. See Brief for Appellant at 24-27 (citing Neal v. Honeywell, Inc., 995 F. Supp. 889, 896 (N.D. Ill. 1998) ("Under [31 U.S.C. § 3730(h)] we double that $50,000 [back pay] and subtract $10,000 [mitigating pay] for a beginning figure of $90,000."), aff'd, 191 F.3d 827 (7th Cir. 1999) (Neal); United States v. Bornstein, 423 U.S. 303, 316 (1976) ("[I]n computing the double damages authorized by the [predecessor FCA], the Government's actual damages are to be doubled before any subtractions are made for compensatory payments previously received by the Government from any source.")). Accordingly, under this method of calculation, Hammond would be entitled to net damages equal to twelve days' pay from Northland. See Reply Brief for Appellant at 5. We disagree.

At the outset, we note that neither the FCA nor its legislative history specifically addresses the question of how to calculate "2 times the amount of back pay." Nevertheless, the overarching purpose of the statute is clear: to provide an aggrieved plaintiff with complete compensation for any injuries incurred as a result of the employer's retaliatory conduct, namely "all relief necessary to make the employee whole." 31 U.S.C. § 3730(h). It is undisputed that, in the instant case, Hammond suffered no pecuniary injury warranting a back pay award as a result of her termination from Northland. Instead, she started work at IMC the very next day with an equal (if not better) salary and benefits package. In light of these facts and the statute's explicit aim of compensatory relief, we reject Hammond's proposed method of calculation, which would award damages for an injury that in fact never occurred and thus would give Hammond a windfall, rather than compensation.[7]

_____

[7]The cases cited by Hammond in support of her argument are inapposite. In Neal v. Honeywell, Inc., 995 F. Supp. 889, 896 (N.D. Ill. 1998), aff'd, 191 F.3d 827 (7th Cir. 1999), the district court neither confronted a situation where mitigation earnings matched wages accrued post-discharge nor offered analysis or justification for

<u>Reinstatement</u>

Hammond next asserts that the district court erred in holding that reinstatement was not an appropriate remedy in the instant case; Hammond argues that such a determination should have been left for the jury as factfinder.  <u>See</u> <u>Gibson v. Mohawk Rubber Co.</u>, 695 F.2d 1093 (8th Cir. 1982).  Alternatively, Hammond claims that she is eligible for front pay and lost future earnings damages.

We agree with the district court that reinstatement was not an appropriate remedy for Hammond, especially in light of the level of alleged acrimony between Hammond and Northland, <u>see</u> Brief for Appellant at 13-19 (detailing purported attempts by Northland employees to intimidate and harass Hammond); <u>see also</u> <u>United Paperworkers Int'l Union, AFL-CIO, Local 274 v. Champion Int'l Corp.</u>, 81 F.3d 798, 805 (8th Cir.1996) (observing that "[s]ubstantial hostility, above that normally incident to litigation, is a sound basis for denying reinstatement."); <u>Standley v. Chilhowee R-IV Sch. Dist.</u>, 5 F.3d 319, 322 (8th Cir.1993) (noting that "the friction that precipitated this lawsuit and that would dog the [employer] if appellants were returned to their teaching positions makes reinstatement an ill-advised remedy in this case."), as well as the anticipated length of reinstatement.  <u>See</u> <u>Duke v. Uniroyal, Inc.</u>, 928 F.2d 1413, 1423 (4th Cir. 1991) (noting that reinstatement may be inappropriate "when the period for reinstatement was expected to be a relatively short one").  Thus, Hammond has failed

---

its method of calculation.  In <u>United States v. Bornstein</u>, 423 U.S. 303, 316 (1976) (<u>Bornstein</u>), the Supreme Court did face a scenario where compensatory payments nearly offset government damages under the predecessor FCA.  However, the <u>Bornstein</u> Court based its calculation choice in large part on the fact that the government incurred additional "costs, delays, and inconveniences occasioned by fraudulent claims," thus warranting additional damages.  <u>See id.</u> at 315.  No such costs are alleged in the instant case.

to generate a genuine issue of material fact as to the practicability of reinstatement. Moreover, based on the record below, Hammond has not provided sufficient factual support for her alternative claim for prospective relief, see Fed. R. Civ. P. 56(e), even assuming *arguendo* that such front pay damages and lost future earnings are available under the FCA, which does not explicitly authorize such relief. See 31 U.S.C. §3730(h).

Emotional distress

Finally, Hammond contends that she submitted sufficient evidence to create a genuine issue of material fact as to whether she is entitled to damages for emotional distress. We agree.

The FCA whistleblower provision explicitly mandates "compensation for any special damages sustained as a result of the discrimination." Id. Damages for emotional distress caused by an employer's retaliatory conduct plainly fall within this category of "special damages." See Neal, 191 F.3d at 831-32 (concluding that compensation for emotional distress is available under § 3730(h) and can be classified as "special damages"). Providing compensation for such harms comports with the statute's requirement that a whistleblowing employee "be entitled to all relief necessary to make the employee whole." 31 U.S.C. § 3730(h).

To prove emotional distress, medical or other expert evidence is not required. See Kim v. Nash Finch Co., 123 F.3d 1046, 1065 (8th Cir. 1997). Instead, "[a] plaintiff's own testimony, along with the circumstances of a particular case, can suffice to sustain the plaintiff's burden in this regard." Id. (quoting Turic v. Holland Hospitality, Inc., 85 F.3d 1211, 1215 (6th Cir. 1996)); see also Wilmington v. J.I. Case Co., 793 F.2d 909, 922 (8th Cir. 1986) (noting testimony of plaintiff and other witnesses about plaintiff's health deterioration, mental anxiety, humiliation, and

emotional distress resulting from working conditions and discharge); <u>Williams v. Trans World Airlines, Inc.</u>, 660 F.2d 1267, 1272-73 (8th Cir. 1981) (referring to testimony from plaintiff about humiliation or mental distress). However, a plaintiff must offer specific facts as to the nature of his or her claimed emotional distress and its causal connection to the allegedly violative actions. <u>See</u> <u>Browning v. President Riverboat Casino-Missouri, Inc.</u>, 139 F.3d 631, 636 (8th Cir. 1998) (noting that "claims with respect to emotional distress damages require proof of evidence of the nature and extent of emotional harm caused by the alleged violation."); <u>cf.</u> <u>Carey v. Piphus</u>, 435 U.S. 247, 263 (1978) (<u>Carey</u>) (plaintiffs seeking emotional distress damages under 42 U.S.C. § 1983 must "produc[e] evidence that mental and emotional distress actually was caused by the denial of procedural due process itself.").

In the instant case, Hammond presented testimonial evidence that she had suffered from severe emotional distress as a result of the allegedly retaliatory actions of her employer. <u>See</u> Hammond deposition, vol. III, at 5 (Q: "In your testimony that you've given us, you've indicated some degree of distress over the events that were taking place. Is that fair to say?" A: "Oh, yes."); <u>id.</u>, vol. III, at 6 ("I believe I have extreme distress, which is a normal reaction to having my [Medicare provider] number used fraudulently, to having my career destroyed, having to leave my home, having my husband's career destroyed, having my children leave their home, their community, their friends, and their state. I think every human being would understand that degree of distress. That's a normal reaction, both emotional and physiological."); <u>id.</u>, vol. III, at 83, 88 ("As things became more and more acrimonious in the last couple of months [at Northland] . . . when we made the change from 'Yeah, maybe we can work this out' and 'Maybe we'll have enough money to hire a psychiatrist' to a very hostile environment . . . . [that period] was pretty traumatic for me, and it was pretty time-consuming and overwhelming.").

Based on this deposition testimony, Hammond has created a genuine issue of material fact as to whether she is entitled to damages for emotional distress resulting from Northland's allegedly retaliatory actions. Specifically, Hammond offers evidence that she suffered emotional distress stemming from purported workplace discrimination and harassment, her unexpectedly early termination, her sudden transition to the IMC job, and the overall impact of Northland's alleged actions on her reputation, practice, and career. Thus, these allegations are sufficient to create a genuine issue of material fact as to her entitlement to emotional distress damages under her FCA claim.[8]

Litigation costs and attorneys' fees

The district court further erred in granting summary judgment for Northland because other relief besides emotional distress damages was available to Hammond under the FCA. Specifically, Hammond has created a genuine issue of material fact as to whether she was eligible for "litigation costs and reasonable attorneys' fees," which are included under § 3730(h) as "special damages sustained as a result of the discrimination" and which Hammond specifically requested in her amended complaint. See Appellant's Appendix at 53 (Amended Complaint).

---

[8]Granted, Hammond's testimony only attributes some of her emotional distress to Northland's purported retaliation. While Northland's allegedly wrongful use of Hammond's Medicare number may have caused Hammond some emotional distress, this unpermitted usage stands apart from any alleged retaliation against Hammond; thus, damages would not be available under 31 U.S.C. § 3730(h) for this emotional distress. Similarly, Hammond's decision to move out of state (which purportedly yielded distress relating to her husband's job and her children's well-being) occurred more than a year after her Northland termination and thus is too attenuated and removed from Northland's alleged retaliatory actions to warrant an award of emotional distress damages.

As the Seventh Circuit noted in Neal, 191 F.3d at 833, "[s]ection 3730(h) is unusual among fee-shifting laws" in that attorneys' fees and litigation costs are categorized as a subset of damages. Apparently, only two other federal statutes classify these fees and costs in the exact same fashion and neither has been the subject of litigation. See 18 U.S.C. § 1031(h) (authorizing whistleblower claim for certain employees reporting fraud against the United States); id. § 3059A(e) (authorizing whistleblower claim for certain employees reporting fraud against federally insured financial institutions). Under the so-called "American Rule," attorneys' fees are ordinarily not recoverable by the prevailing party in federal litigation in the absence of statutory authorization. See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 263-64 (1975). Typically, when such fee-shifting does occur, attorneys' fees are awarded as part of the prevailing party's costs. See, e.g., 29 U.S.C. § 216(b) ("The court in such action [under the Fair Labor Standards Act] shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."); 42 U.S.C. § 1988(b) ("In any action [under Title VI, Title IX, 42 U.S.C. §§ 1981-1986, or certain other statutes] . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . ."); id. § 9659(f) ("The court, in issuing any final order in any action brought pursuant to this section [of the Comprehensive Environmental Response, Compensation, and Liability Act], may award costs of litigation (including reasonable attorney and expert witness fees) to the prevailing or the substantially prevailing party . . . ."). Under the FCA, however, attorneys' fees and litigation costs are part and parcel of the "special damages sustained as a result of the discrimination." 31 U.S.C. § 3730(h). Although neither the FCA nor its legislative history provide any explanation for Congress's decision to include these fees and costs within "special damages," we assume that Congress intended such compensation as "necessary to make the employee whole." Id. Given the presumptive availability of these special damages to Hammond (provided she succeeds at trial on her § 3730 whistleblower claim), we conclude that the district court erred in holding that

-13-

Hammond failed to create a genuine issue of material fact as to whether she was entitled to any special damages under § 3730(h).

Finally, we note that, even if Hammond were not entitled to these special damages under § 3730(h), there is a genuine issue of material fact concerning her eligibility for an award of nominal damages. See Carey, 435 U.S. at 266 (holding that denial of procedural due process is actionable for nominal damages without proof of actual injury) ("By making the deprivation of such ["absolute"] rights actionable for nominal damages without proof of actual injury, the law recognizes the importance of organized society that those rights be scrupulously observed . . . ."); Welch v. Spangler, 939 F.2d 570, 573 (8th Cir. 1991) (affirming award of nominal damages for violation of a consent decree, even though plaintiff had not proven actual injury or damages); Dean v. Civiletti, 670 F.2d 99, 101 (8th Cir. 1982) (per curiam) (allowing recovery of nominal damages in action where plaintiff had established elements of Title VII claim but was unable to show actual damages). Therefore, summary judgment should not have been granted in favor of Northland.

**Conclusion**

We therefore reverse the district court's order and remand the case to the district court for further proceedings consistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-14-