# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-3043

_____

United States of America,          *
ex rel. Maynard Bernard,           *
                                   *
                Appellant,         *
                                   *
        v.                         *
                                   *
Casino Magic Corp., a Minnesota    *
Corporation; Casino Magic American *
Corp., a Minnesota Corporation,    *
                                   *
                Appellees.         *

Appeals from the United States
District Court for the
District of South Dakota.

_____

No. 03-3149

_____

United States of America,          *
ex rel. Maynard Bernard,           *
                                   *
                Appellee,          *
                                   *
        v.                         *
                                   *
Casino Magic Corp., a Minnesota    *
Corporation; Casino Magic American *
Corp., a Minnesota Corporation,    *
                                   *
                Appellants.        *

_____

Submitted: May 13, 2004
Filed: September 13, 2003
_____

Before MURPHY, HEANEY, and MAGILL, Circuit Judges.
_____

HEANEY, Circuit Judge.


This is the second time this case has come before this court. The first time, the United States through its relator (collectively the United States or government) disputed the legality of contracts involving a casino project between the Sisseton-Wahpeton Sioux Tribe (the Tribe) and Casino Magic Corporation (Casino Magic). We declared the contracts illegal and remanded for a determination of damages. On summary judgment, the district court awarded the United States $350,000. Both parties now appeal this amount. We affirm in part and reverse in part.

## I. Background

In 1993, the Tribe contacted Casino Magic to help in the process of developing a casino on the Tribe's land. The two parties entered into three agreements that defined their business relationship: the Consulting Agreement, the Construction and Term Loan Agreement, and the Participation Agreement. The first round of litigation centered on whether the three agreements, collectively, constituted a management agreement that required approval from the National Indian Gaming Commission (NIGC). United States ex rel. Bernard v. Casino Magic Corp., 293 F.3d 419 (8th Cir. 2002) (Bernard I). On appeal, we held that, taken together, the agreements did constitute a management agreement. Id. at 426. Since they were not approved by the NIGC, the agreements were invalid and the United States was entitled to recovery of any fees paid by the Tribe for services rendered under the invalid contracts. Given

-2-

that the record did not contain any fee information, we remanded for a determination of "fees . . . paid by the Tribe to Casino Magic." Id. at 427.

On remand, the district court awarded the United States $350,000. This amount reflected the Tribe's payments to Casino Magic pursuant to the terms of the Consulting Agreement. Both parties appeal the district court's determination. The United States maintains that it should have been awarded the following additional sums: the interest payments Casino Magic collected as a result of its construction loan to the Tribe; the origination fee on the same loan; the prepayment penalty fee the Tribe paid to Casino Magic; various indirect costs of the project that the Tribe reimbursed to Casino Magic; and prejudgment interest. Casino Magic, on the other hand, argues that because its out-of-pocket expenses on the casino project exceeded $350,000, the United States is not entitled to any payment.

## II. Analysis

We review a grant of summary judgment de novo. Hammond v. Northland Counseling Ctr., Inc., 218 F.3d 886, 890 (8th Cir. 2000). If there is no genuine issue as to any material fact, summary judgment is appropriate. Fed.R.Civ.P. 56(c). "When ruling on a summary judgment motion, a court must view the evidence in the light most favorable to the nonmoving party." County of Mille Lacs v. Benjamin, 361 F.3d 460, 463 (8th Cir. 2004) (citation and internal quotation marks omitted).

Twenty-five U.S.C. § 81[1] details the proper procedure for reimbursing the United States when an agreement relative to Indian lands,[2] between a tribe and a third party, has not been properly approved:

> All contracts or agreements made in violation of this section shall be null and void, and all money or other thing of value paid to any person by any Indian or tribe, or anyone else, for or on his or their behalf, on account of such services, in excess of the amount approved by the Commissioner and Secretary for such services, may be recovered by suit in the name of the United States in any court of the United States . . . .

The disputed payments here fall into four basic categories: borrowing fees, indirect costs, out-of-pocket expenses, and prejudgment interest. We examine each category in turn and affirm the district court in its damages calculation in three out of the four categories, reversing only the district court's denial of prejudgment interest.

## A. Borrowing Fees

In September 1994, Casino Magic loaned the Tribe $5 million (the Bridge Loan) so it could begin construction on the casino. Nearly two years later, the Tribe secured a loan with BNC National Bank of Bismarck (the Bank) for $17.5 million that was to be paid in installments at the Tribe's request. Casino Magic agreed to contribute $5 million of the $17.5 million loan. The loan was set up such that twenty-six lenders were each responsible for funding a percentage of the loan. When the Tribe made a draw on the loan, each of the lenders contributed its respective percentage share to the payment.

---

[1] Though Congress eliminated this section in 2000, we rely on the version of the statute that was in effect when the suit was filed. See United States ex rel. Steele v. Turn Key Gaming, Inc., 260 F.3d 971, 973 (8th Cir. 2001).

[2] For an agreement to be "relative" to the land, the agreement must "put in play actual incidents and rights of property ownership." Id. at 978-79.

The Tribe's first draw on the loan was for $6 million. Casino Magic was required to contribute approximately $1.7 million; its proportionate share. The Tribe used its first draw to pay off the Bridge Loan in full, so Casino Magic netted approximately $2.3 million on the transaction – the difference between what the Tribe owed Casino Magic on the Bridge Loan and what Casino Magic owed the Tribe due to the first draw. Casino Magic did not charge interest or collect any fees on the Bridge Loan.

When the Tribe made payments on the Bank's loan, the Bank distributed the payments to each of the lenders based on their percentage of participation. This was also true of any interest payments the Bank accrued, and for the origination fee the Bank charged to the Tribe. Additionally, Casino Magic collected approximately $20,000 of the prepayment penalty the Tribe was charged for paying off the $17.5 million loan early.

The government argues that the district court erred by not including the payments that Casino Magic received from the Tribe via the Bank – the interest fees, the origination fee, and the prepayment penalty fee – in its damages award to the government. Because these payments were made pursuant to the Construction and Term Loan Agreement, the government reasons that the payments were made as part of the overall management scheme created by the Consulting Agreement, the Construction and Term Loan Agreement, and the Participation Agreement. Casino Magic, on the other hand, maintains that the money it collected in connection with the Bridge Loan and the bank loan were not due to management services rendered and are therefore not within the purview of 25 U.S.C. § 81.

We agree with the district court that the government is not entitled to the return of payments the Tribe made to Casino Magic in connection with the Bridge Loan or the subsequent $17.5 million loan. It is true that in Bernard I we examined the interplay between all three contracts in determining that a management agreement implicating property rights existed between the Tribe and Casino Magic. The issue

-5-

of damages, however, requires a slightly different analysis. According to the language of 25 U.S.C. § 81, only fees resulting from illegal services, in this case management fees, need to be returned. While there may have been language in the three agreements between the Tribe and Casino Magic indicating that Casino Magic was attempting to create a management relationship that required NIGC approval, it does not follow that all of the payments it collected were solely as a result of the unapproved *management* relationship. Casino Magic received those payments as a result of its lender status, not because of management services it rendered that were relative to the land. See United States ex rel. Yellowtail v. Little Horn State Bank, 828 F. Supp. 780, 787 (D. Mont. 1992) (finding loan agreements between a bank and a tribe not to be service contracts as contemplated by 25 U.S.C. § 81 because the loan agreements were not "relative" to the land). The district court was correct in its interpretation of Bernard I: We required Casino Magic to return the management fees it collected, and borrowing fees do not constitute management fees. See Bernard I, 293 F.3d at 426 ("The law is clear that management agreements must be approved by the Chairman of the NIGC. Without that approval, invalid management fees must be recovered on behalf of the Tribe.").

## B. Indirect Costs

The government has identified several costs the Tribe reimbursed to Casino Magic that it maintains were not directly related to the casino project and should therefore be returned by Casino Magic. These costs included licensing fees, Casino Magic's legal fees, and a donation to a men's softball team (totaling approximately $206,000). The government also cites to other, "unverifiable" expenses, totaling $41,440.71 that it believes it is owed. As with the borrowing fees, we agree with the district court that these indirect costs were not paid by the Tribe in exchange for management services, or as a result of services rendered relative to the land, and are therefore not recoverable under 25 U.S.C. § 81.

-6-

## C. Out-of-Pocket Expenses

Casino Magic maintains that it should not be required to pay any damages because it expended over $600,000 of its own money in connection with the casino project, and to allow the government to collect $350,000, without a deduction of out-of-pocket expenses, would result in an unfair double-billing. To support its argument, Casino Magic primarily relies on language from Bernard I stating, "If the agreements were in fact invalid, the Tribe expects Casino Magic to return any fees paid to it under the terms of the invalid agreements, excluding the Tribe's secured loan repayment to Casino Magic and any other out-of-pocket expenses." Bernard I, 293 F.3d at 424. Casino Magic's reliance on this language from Bernard I is misplaced. This portion of the opinion is merely stating what the parties' expectations were – not what we eventually held.

Additionally, Casino Magic cites to one case in which a South Dakota district court found that a management agreement was not properly authorized by the United States, but did not require the casino management company to return its fees to the government. See Rita, Inc. v. Flandreau Santee Sioux Tribe, 798 F. Supp. 586 (D. S.D. 1992). This case, however, does not intersect with ours. The district court in Rita was deciding whether to grant a temporary restraining order that would have prevented the tribe from removing the management company from the casino. In deciding to deny the temporary restraining order, but allowing the case to go forward, the district court stated that the tribe induced the management company into investing $3 million in the casino – a fact that the district court stated may entitle the company to "some relief." Id. at 589. Rita does not, however, suggest that a management company must return only the *profits* it obtained as the result of an illegal contract under 25 U.S.C. § 81.

Casino Magic's out-of-pocket expenses should not be deducted from the damages award. The controlling statute, 25 U.S.C. § 81, does not contemplate such a result: The statute says that "all money" paid for services should be returned,

without any reference to compensating the third party for its expenditures. The district court acted properly in excluding these costs from its damages calculation.

## D.  Prejudgment Interest

Finally, the district court denied the government's request for prejudgment interest. We review a district court's decision to grant prejudgment interest for an abuse of discretion. Children's Broad. Corp. v. Walt Disney Co., 357 F.3d 860, 868 (8th Cir. 2004). The purpose of awarding prejudgment interest is to compensate the prevailing party for its true money damages, to encourage settlements, and to deter parties from benefitting from unfairly delaying litigation. Val-U Constr. Co. v. Rosebud Sioux Tribe, 146 F.3d 573, 582 (8th Cir. 1998). To that end, generally prejudgment interest should be awarded, absent exceptional circumstances. See Turn Key Gaming, Inc. v. Oglala Sioux Tribe, 313 F.3d 1087, 1093 (8th Cir. 2002). Often cited examples of such circumstances include the claimant's bad faith, the claimant's assertion of frivolous claims, and the claimant's repeated delay tactics. See e.g. City of Milwaukee v. Cement Div., Nat'l Gypsum Co., 515 U.S. 189, 196 (1995); Stroh Container Co. v. Delphi Indus., Inc., 783 F.2d 743, 752 (8th Cir. 1986).

There are no exceptional circumstances here that warrant the denial of prejudgment interest. The district court explicitly recognized the justifications underlying a grant of prejudgment interest, but cited two reasons for refusing to award prejudgment interest. The entirety of the court's analysis follows: "Casino Magic has incurred $632,000 in out-of-pocket expenses for which it will not be reimbursed. Furthermore, the reimbursement of $350,000 will make the Tribe whole again." (Dist. Ct. Op. at 8-9.)

The district court's analysis of the equities in this case is incomplete in our view. While it may be true that Casino Magic incurred out-of-pocket expenses for which it will not be reimbursed, it is also true that Casino Magic profited from the loan arrangement it had with the Tribe. The district court's second rationale, that the

Tribe would be made whole by the $350,000 damage award, ignores the time value of money. The Tribe "has been denied the use of money which was legally due." Stroh Container Co., 783 F.2d at 752. An award of prejudgment interest recognizes that the Tribe can only be made whole by awarding prejudgment interest. See Kansas v. Colorado, 533 U.S. 1, 10 (2001) ("Our cases since 1933 have consistently acknowledged that a monetary award does not fully compensate for an injury unless it includes an interest component.").

We do not find that the district court's reasons for denying prejudgment interest in this case rise to the level of exceptional circumstances that justifies deviating from the general rule of awarding prejudgment interest. Accordingly, we reverse the district court's denial of prejudgment interest.

## III.  Conclusion

For the reasons stated above, we affirm the district court's award of $350,000 to the government, but reverse and remand for a determination of prejudgment interest owed to the government on that amount.

_____