PRESENT:  All the Justices

HENRY LEWIS
                                        OPINION BY
v.    Record No. 131308    JUSTICE ELIZABETH A. McCLANAHAN
                                        APRIL 17, 2014
CITY OF ALEXANDRIA

            FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
                          James C. Clark, Judge


        Henry Lewis (Lewis) claims the circuit court erred in

declining to award reinstatement, front pay and/or compensation

for lost pension benefits in his wrongful termination action

against the City of Alexandria (the City) under Code § 8.01-

216.8 of the Virginia Fraud Against Taxpayers Act (VFATA), Code

§§ 8.01-216.1 through -216.19.  We disagree and will affirm the

judgment of the circuit court.

                          I.  Background

        The City hired Lewis in January 2008 as a senior project

manager in its Capital Projects Division of the Department of

General Services (the Department).  Lewis was assigned to manage

the construction of a new police and emergency communications

facility (hereinafter, the police facility project), and worked

in that capacity until August 2011, when the City terminated his

employment.

        Lewis sued the City alleging "unlawful retaliation and

discrimination" in violation of Code § 8.01-216.8, based on his

alleged wrongful termination.  Specifically, Lewis claimed the

City retaliated and discriminated against him by terminating his employment in response to complaints he made about Jeremy McPike (McPike), a Deputy Director, and then Director, of the Department (when McPike became Lewis' direct supervisor). Lewis complained to various individuals in the Department that McPike approved payments of certain false invoices submitted to the City by the construction company serving as the "construction manager" for the police facility project. These complaints caused acrimony between Lewis and McPike, as well as between Lewis and the construction manager, which, Lewis claimed, eventually led to his wrongful termination.

Lewis sought an award of two times the amount of back pay (as liquidated damages), reinstatement, special damages, including lost pension benefits, and "any other relief provided for in Code § 8.01-216.8." To the extent the circuit court determined that reinstatement was "impractical and unworkable," Lewis requested in the alternative that he be awarded front pay (i.e., lost future earnings).[1]

---

[1] See Johnson v. Spencer Press of Maine, Inc., 364 F.3d 368, 379 (1st Cir. 2004) (explaining that "[a]n award of back pay compensates plaintiffs for lost wages and benefits between the time of discharge and the trial court judgment," whereas "[f]ront pay . . . compensates plaintiffs for lost wages that may accrue after the conclusion of the trial").

2

On Lewis' pretrial motion, the circuit court ruled that a jury would decide whether the City violated Code § 8.01-216.8 in terminating his employment and, if so, decide his claim for back pay. If the jury found in favor of Lewis, his other remedial requests would then be treated as requests for equitable relief and thus decided by the circuit court.

Unlike the issue of liability, evidence regarding the amount of back pay that would be owed to Lewis upon a finding of wrongful termination was undisputed. Approximately nine months after his termination, Lewis secured new employment with the Prince George's County, Maryland, Public Schools in June 2012, earning approximately ten thousand dollars a year less than he earned with the City. Accordingly, Lewis' expert witness in the field of economic damages, Joel Morse, Ph.D. (Morse), testified that Lewis' back pay would equal the rate of his salary with the City as applied to the period extending from the time of his termination (August 2011) to the time of trial (March 2013), less the earnings he received from his new employment during that same period.

Morse then testified outside the presence of the jury regarding his analysis in support of Lewis' claims for front pay and compensation for lost pension benefits. Although it is somewhat unclear from the record, Lewis has asserted below and maintains on appeal that Morse's testimony established that his

3

lost front pay through age 65 (Lewis was 58 at the time of trial) was $57,178.[2]  As to the pension-related claim, Morse explained that Lewis' pension with the City had not vested at the time of his termination.  Lewis would have been required to work for the City for another year and a half for his pension to vest.  Nevertheless, according to Morse, Lewis was "denied the value [of that pension] between age 65 and 80 [Lewis' life expectancy]," the present value of which was $175,130.  Morse further explained, however, that if Lewis worked to age 68 in his current position, he would receive a pension from the State of Maryland.

The jury returned a verdict in favor of Lewis and awarded damages of $104,096 in back pay.  Lewis accordingly moved the court to include liquidated damages to this award pursuant to Code § 8.01-216.8, which would double the back pay award resulting in a total of $208,192.  The circuit court granted the motion.

---

[2] During his testimony, Morse relied on a chart that was only used as demonstrative evidence, which may have shown this front pay figure.  Morse did testify, however, that based on his calculations Lewis' back pay and front pay combined would total $161,228.  We will simply assume, for purposes of this opinion, that $57,178 was Morse's front pay figure, but hold that the circuit court did not abuse its discretion in declining to award this sum to Lewis as front pay.

4

Lewis then moved the circuit court "to use its equitable powers" to award additional relief against the City, including "reinstatement . . . or if reinstatement is not feasible, in the alternative . . . an award of front-pay in the amount of $57,178.00"; and an award "for his loss of pension benefits in the amount of $175,130."[3] The circuit court declined to award reinstatement, front pay or pension compensation. On a motion for reconsideration, Lewis again asked the circuit court to award front pay and pension compensation, but abandoned his claim for reinstatement. The circuit court again denied this requested relief in its final order. In reaching this decision, the circuit court reasoned that Lewis had been "made whole" by the jury's verdict and the circuit court's other awards in his favor. The circuit court otherwise found that the claims for front pay and pension compensation were "subject to too much speculation."

## II. Analysis

On appeal, Lewis asserts in his sole assignment of error that the circuit court erred in declining to award

---

[3] In addition, Lewis requested (i) an award of attorneys' fees, as expressly provided for in Code § 8.01-216.8, (ii) payment for his unused vacation leave, and (iii) expungement of all disciplinary actions entered on his employment file with the City. The circuit court ruled in Lewis' favor on these three requests, which included awards of $243,684.12 in attorneys' fees and costs, and $8,181 for loss of vacation pay. None of these awards are at issue in this appeal.

"reinstatement, front pay and/or compensation for his lost pension" under Code § 8.01-216.8.  In requiring that we review the circuit court's construction and application of the statute's remedial provisions, this appeal presents a case of first impression in this Court.

A. Code § 8.01-216.8

Code § 8.01-216.8, the VFATA's anti-retaliation provision, creates a cause of action for wrongful termination resulting from the reporting of potential false claims against the Commonwealth and its subsidiaries.[4]  Thus, upon establishing that the City terminated his employment in violation of the statute, Lewis was entitled to seek the relief expressly provided therein.  The statute states that such an employee "shall be entitled to all relief necessary to make that employee . . . whole."  Code § 8.01-216.8.  The statute further states that "[r]elief shall include reinstatement[,] two times the amount of back pay, interest on the back pay, and compensation for any

---

[4] The VFATA is based on the federal civil False Claims Act (FCA), 31 U.S.C. §§ 3729-3733.  The relief provided in Code § 8.01-216.8 of the VFATA is, in fact, identical to the relief provided in the FCA under 31 U.S.C. § 3730(h)(2).  The FCA cases thus provide guidance for our review in this appeal.  We also find guidance in cases addressing other federal statutory schemes containing anti-retaliatory relief for wrongful termination, specifically the Age Discrimination in Employment Act (ADEA) (29 U.S.C. § 626(b)), the Family Medical Leave Act (FMLA) (29 U.S.C. § 2617(a)(1)(B)), and Title VII of the Civil Rights Act of 1964 (Title VII) (42 U.S.C. § 2000e-5(g)).

special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys fees." Id.

## B. Reinstatement

As to the circuit court's denial of his claim for reinstatement, Lewis cannot make the argument on appeal that the circuit court erred in not awarding such relief. Lewis abandoned that claim at the hearing on his motion asking the circuit court to reconsider its earlier denial of reinstatement, front pay and pension compensation.

Lewis' counsel began his argument in support of the motion by stating that Code § 8.01-216.8 "says the [c]ourt shall award all relief necessary, including reinstatement," but then asserted that "quite frankly, reinstatement is almost never practical." At that point, the circuit court judge interjected by asking, "Can we agree that reinstatement is just not an option here[?]" Lewis' counsel responded, "Fair enough, Judge," after the circuit court judge went on to explain that his question was based on the evidence at trial of "obvious acrimony," which led him to believe that reinstatement was "not an option."

Moreover, even after assigning error to the circuit court's decision not to award reinstatement, Lewis states on brief in this appeal that "the circuit court likely enjoyed the discretion to determine that reinstatement was impractical,

7

particularly given the parties' animosity and the fact that Lewis had secured new employment."  A party "'may not approbate and reprobate by taking successive positions in the course of litigation that are either inconsistent with each other or mutually contradictory.'"  Rowe v. Commonwealth, 277 Va. 495, 502, 675 S.E.2d 161, 164 (2009) (quoting Cangiano v. LSH Bldg. Co., 271 Va. 171, 181, 623 S.E.2d 889, 895 (2006)).  Therefore, we leave for another day our consideration of the parameters of the statute's reinstatement provision.

## C. Front Pay

We agree with the parties that the circuit court's treatment of Lewis' claim for front pay as a request for equitable relief under Code § 8.01-216.8 was correct.  See Board of Supervisors of James Cnty. v. Windmill Meadows, LLC, 287 Va. 170, 175, 752 S.E.2d 837, 839 (2014) (on appeal, circuit court's statutory construction is subject to de novo review (citing Newberry Station Homeowners Ass'n v. Board of Supervisors, 285 Va. 604, 611, 740 S.E.2d 548, 552 (2013))).  That ruling, which was consistent with the treatment of front pay claims in FCA, FMLA, Title VII and ADEA cases, meant that the circuit court's subsequent decision regarding whether to award front pay was committed to its discretion.  See, e.g., Nichols v. Ashland Hosp. Corp., 251 F.3d 496, 503-04 (4th Cir. 2001) (FMLA); Selgas v. American Airlines, Inc., 104 F.3d 9, 12-13 & n.2 (1st Cir.

8

1997) (Title VII); Duke v. Uniroyal, Inc., 928 F.2d 1413, 1424 (4th Cir. 1991) (ADEA); Wiehua Huang v. Rector and Visitors of the Univ. of Va., 2013 U.S. Dist. LEXIS 34186, at *39-40 (W.D. Va. March 7, 2013) (FCA) Wilkins v. St. Louis Housing Auth., 198 F.Supp.2d 1080, 1091-92 (E.D. Mo. 2001) (FCA). We therefore also agree with the parties that this Court's review of the circuit court's denial of front pay is subject to an abuse of discretion standard. See Landrum v. Chippenham & Johnston-Willis Hosps., Inc., 282 Va. 346, 352, 717 S.E.2d 134, 136-37 (2011) (analyzing abuse of discretion standard); Bentley Funding Group, L.L.C. v. SK&R Group, L.L.C., 269 Va. 315, 323-24, 609 S.E.2d 49, 53 (2005) (circuit court's exercise of discretionary authority in equity reviewed under abuse of discretion standard).

Lewis argues the circuit court abused its discretion in not awarding front pay under Code § 8.01-216.8 in the amount of $57,178, based on testimony of his economic damages expert. The circuit court had to award at least "some amount of front pay in lieu of reinstatement," Lewis contends, or "explain why front pay was somehow unnecessary to make Lewis whole." (Emphasis omitted.) With this, we disagree.

Code § 8.01-216.8 nowhere mentions the words "front pay."[5] Thus, to the extent front pay is an available remedy under the statute in an appropriate case, it would necessarily be awarded under the statute's provision for recovery of "any special damages sustained as a result of the discrimination," which are not defined in the statute.  Id.  Furthermore, the overriding consideration under the express terms of the statute is not that the plaintiff be awarded any particular kind of relief, or combination of remedies, as "special damages."  Id.  Rather, it is ultimately a matter of compensating the plaintiff with "relief necessary to make [him] whole."  Id.  See Hammond v. Northland Counseling Ctr., Inc., 218 F.3d 886, 892 (8th Cir. 2000) (the FCA's anti-retaliation statute has same "overarching purpose").

It is true that front pay is commonly given consideration as an equitable remedy in the alternative to reinstatement in cases decided under anti-retaliation statutes for wrongful termination, including the FCA.  See Wilkins, 198 F.Supp.2d at 1091 ("While the FCA does not specifically include front pay as a remedy available to the court to effect full compensation, the court concludes that Congress intended that front pay be awarded

---

[5] Nor is front pay expressly provided as a remedy in the anti-retaliation provisions of the FCA, ADEA, FMLA or Title VII. See supra note 4.

10

in the appropriate case to effect the express Congressional intention that a claimant under § 3730(h) be made whole." (internal citation omitted)).  But front pay is not awarded as a matter of course when reinstatement is denied.  As the United States Court of Appeals for the Fourth Circuit has counseled, "front pay may serve as a substitute or a complement [to reinstatement].  Because of the potential for windfall, however, its use must be tempered."  Duke, 928 F.2d at 1424.   Hence, "[i]ts award, as an adjunct or an alternative to reinstatement, must rest in the discretion of the court in shaping the appropriate remedy."  Id.  Similarly mindful that the plaintiff should not receive "a windfall, rather than compensation" in an FCA case, the United States Court of Appeals for the Eighth Circuit held in Hammond that the plaintiff was not entitled to either reinstatement or front pay, even though there was factual support for an award of other FCA damages and attorneys' fees. 218 F.3d at 892-95.  See Moysis v. DTG Datanet, 278 F.3d 819, 829 (8th Cir. 2002) (trial court did not abuse its discretion in declining to award front pay because, "in light of the current employment [of plaintiff] and back pay and compensatory awards, an award of front pay would be an unnecessary windfall to [plaintiff]").[6]

---

[6] Code § 8.01-216.8 makes no express provision for front

11

Here, the circuit court found that Lewis was "made whole" under Code § 8.01-216.8 without an award of front pay, based upon (i) the jury's award of $104,096 in back pay and the circuit court's doubling of that award as liquidated damages, for a total award of $208,192; (ii) the circuit court's award of $8,181 for lost vacation pay; and (iii) the circuit court's award of $243,684.12 in attorneys' fees. In light of these awards, we cannot say that the circuit court abused its discretion in declining to award front pay to Lewis in the amount of $57,178, as requested, particularly given that his liquidated damages award was nearly twice the amount of his claim for front pay.

We find support for this conclusion in Dotson v. Pfizer, Inc., 558 F.3d 284 (4th Cir. 2009), a FMLA wrongful termination case in which the plaintiff was awarded liquidated damages, but not front pay. Like Lewis, the plaintiff in Dotson argued that the trial court erred by considering "the role played by the

_____

pay. As explained above, absent an award of reinstatement, front pay is an equitable remedy that may be awarded, in the circuit court's discretion, as an alternative to reinstatement. The overarching requirement under the statute is that the plaintiff be made "whole." Id. Consequently, absent reinstatement, an award of front pay is not required as a matter of law in any case apart from consideration of the other relief, if any, awarded under the statute in making the plaintiff whole, as decided by the circuit court in its sound discretion.

12

liquidated damages [award] in making him whole" when the trial court declined to award front pay.  Id. at 300-01.  The Fourth Circuit held that the trial court did not abuse its discretion in making this ruling, explaining that "it is difficult to understand why a lower court cannot consider the role of liquidated damages in reaching [the FMLA anti-retaliation provision's] overarching goal" of making the plaintiff whole. Id. at 301.  Other courts have similarly recognized that an award of liquidated damages may justify the denial of front pay. See, e.g., McNeil v. Economics Laboratory, Inc., 800 F.2d 111, 118 (7th Cir. 1986) (explaining that "front pay may be less appropriate when liquidated damages are awarded"); Wildman v. Lerner Stores Corp., 771 F.2d 605, 616 (1st Cir. 1985) ("Because future damages are often speculative, the district court, in exercising its discretion, should consider the circumstances of the case, including the availability of liquidated damages."); Walther v. Lone Star Gas Co., 952 F.2d 119, 127 (5th Cir. 1992) ("We agree with the Seventh and First Circuits that a substantial liquidated damage award may indicate that an additional award of front pay is inappropriate or excessive."); Cancellier v. Federated Dep't Stores, 672 F.2d 1312, 1319 (9th Cir. 1982) ("[A]vailability of a substantial liquidated damages award may be a proper consideration in denying additional damages in lieu of reinstatement."); see also Bergerson v. New

13

York Office of Mental Health, 652 F.3d 277, 288 (2d Cir. 2011) (explaining, in an ADEA wrongful termination case, that "[a]n award of front pay is discretionary, and if a district court makes a nonerroneous 'specific finding' that a plaintiff has already been made whole, no abuse of discretion can be found in denying front pay").[7]

D. Compensation for Lost Pension Benefits

Finally, Lewis argues that the circuit court abused its discretion in denying his claim against the City for lost pension benefits in the amount of $175,130.  As with front pay, Code § 8.01-216.8 does not expressly provide for relief pertaining to lost pension benefits.  Thus, to the extent such relief may be awarded, it too would necessarily be awarded as an equitable remedy for "special damages."  Code § 8.01-216.8.  See

---

[7] Because of the quantitative comparison of Lewis' front pay claim to his liquidated damages award, justifying the circuit court's denial of an award of front pay, we need not address the circuit court's determination that his front pay claim was otherwise too speculative.  We nevertheless note that it is, of course, well established under applicable case law that the longer the period over which front pay is requested, the more speculative a front pay award becomes.  Downey v. Strain, 510 F.3d 534, 545 (5th Cir. 2007)  Here, Lewis sought an award of front pay through age 65, a period of nine years from the date of his termination and seven years from the date of trial.  Compare, id. at 544-45 (affirming trial court's two year front pay award); Dollar v. Smithway Motor Xpress, Inc., 710 F.3d 798, 808-811 (8th Cir. 2013) (reversing trial court's ten year front pay award).

14

Blum v. Witco Chem. Corp., 829 F.2d 367, 373-74 (3rd Cir. 1987) (treating claim for lost pension compensation under the ADEA as claim for equitable relief). Accordingly, as noted in regard to Lewis' claim for front pay, we conclude that the decision whether to award lost pension compensation to Lewis was committed to the circuit court's discretion, and that his appeal of the circuit court's denial of this claim is likewise subject to an abuse of discretion standard of review.

The salient facts before the circuit court relevant to its denial of Lewis' claim for pension compensation are as follows. Lewis was a licensed architect with more that thirty-five years of experience in architecture and construction project management, and no evidence was presented indicating that he could no longer market his professional skills. His contract with the City contained no specific period of employment, and the police facility project, which was his only assignment during his three and a half years of employment with the City, was completed two months after his termination. Lewis' pension with the City had not vested at the time of his termination, and would not have vested for another eighteen months. Finally, Lewis obtained employment after his termination that paid a comparable salary and would provide pension benefits upon his retirement at age 68.

15

Based on these facts, we hold that the circuit court did not abuse its discretion in determining that Lewis was made whole through his other awards against the City, absent an award of pension compensation; and that his claim for pension compensation in the amount of $175,130 was otherwise "subject to too much speculation."[8]

### III. CONCLUSION

For these reasons, we hold that the circuit court did not abuse its discretion in awarding relief to Lewis under Code § 8.01-216.8, absent an award of reinstatement, front pay or pension compensation.  We will thus affirm the judgment of the circuit court.

<u>Affirmed</u>.

JUSTICE MIMS, concurring.

I concur with the majority's conclusions that Lewis abandoned his claim for reinstatement and that the circuit court did not abuse its discretion by denying his claim for pension compensation because it was too speculative.  However, I write

---

[8] Lewis cites no persuasive authority compelling a different conclusion.  In the two cases that he does cite in support of this claim, <u>Blum</u>, 829 F.2d at 371-76, and <u>Buckley v. Reynolds Metals Co.</u>, 690 F.Supp. 211, 213-220 (S.D.N.Y. 1988), the plaintiffs had been long term employees with tenures of between 9 and 25 years, and were entitled to pension benefits at the time their employment was terminated.

separately because I believe that the interpretation of Code §
8.01-216.8 in Part II(C) is both unnecessary and incorrect.

As the majority opinion recites, front pay is awarded as
prospective compensation, for pay lost from the date of judgment
into the future.  Johnson v. Spencer Press of Maine, Inc., 364
F.3d 368, 379 (1st Cir. 2004).

The evidence in this case is that the project for which
Lewis was principally responsible ended in October 2011, at
least five months before he filed his complaint and 18 months
before entry of judgment.  Although Lewis argues that he is
entitled to an award of front pay for the difference between his
compensation from the City and from his new employer through age
65, he failed to prove at trial that his at-will employment by
the City would not have lawfully terminated upon the conclusion
of the project.  Cf. Wilkins v. St. Louis Hous. Auth., 198
F.Supp.2d 1080, 1092 (E.D. Mo. 2001).  He therefore failed to
prove that he was entitled to ongoing employment by the City at
his previous level of compensation from the date of judgment
forward.

Consequently, Lewis' claim for front pay was, as the
circuit court ruled, simply too speculative.  The court did not
abuse its discretion when it declined to enter such an award.
This basis is sufficient to affirm its judgment and the Court
need not reach the interpretation of Code § 8.01-216.8.  Yet the

majority opinion does so, relying on its analysis of that issue to decide this assignment of error. In addition to being unnecessary, that analysis is incorrect.

Code § 8.01-216.8 provides that when an employee proves a claim of unlawful retaliation under the Virginia Fraud Against Taxpayers Act (the "VFATA"), he or she "shall be entitled to all relief necessary to make [him or her] whole." (Emphasis added.) The statute further specifies that "[r]elief shall include reinstatement with the same seniority status that [he or she] would have had but for the discrimination, two times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorney fees." Id. (emphasis added).

"It is elementary that the primary object in the interpretation of a statute is to ascertain and give effect to the intention of the legislature." Andrews v. Shepherd, 201 Va. 412, 414, 111 S.E.2d 279, 281 (1959). "In interpreting [a] statute, 'courts apply the plain meaning . . . unless the terms are ambiguous or applying the plain language would lead to an absurd result.'" Baker v. Commonwealth, 284 Va. 572, 576, 733 S.E.2d 642, 644 (2012) (quoting Boynton v. Kilgore, 271 Va. 220, 227, 623 S.E.2d 922, 926 (2006)).

"When the word 'shall' appears in a statute it is generally used in an imperative or mandatory sense." Schmidt v. City of Richmond, 206 Va. 211, 218, 142 S.E.2d 573, 578 (1965); accord City of Waynesboro Sheriff's Dep't v. Harter, 222 Va. 564, 566, 281 S.E.2d 911, 912-13 (1981). "In this sense 'shall' is inconsistent with, and excludes, the idea of discretion, and operates to impose a duty which may be enforced . . . unless an intent to the contrary appears." Andrews, 201 Va. at 414, 111 S.E.2d at 281-82.

Nevertheless, "the courts, in endeavoring to arrive at the meaning of written language, whether used in a will, a contract, or a statute, will construe 'may' and 'shall' as permissive or mandatory in accordance with the subject matter and context." Pettus v. Hendricks, 113 Va. 326, 330, 74 S.E. 191, 193 (1912). Code § 8.01-216.8 therefore is ambiguous because we must determine whether the General Assembly intended the relief provision to be mandatory or permissive. Brown v. Lukhard, 229 Va. 316, 321, 330 S.E.2d 84, 87 (1985) ("Language is ambiguous if it admits of being understood in more than one way or refers to two or more things simultaneously . . . . is difficult to comprehend, is of doubtful import, or lacks clearness and definiteness.").

When interpreting an ambiguous statute, courts may consult its legislative history. See id. (excluding use of legislative

19

history when statute is unambiguous). The General Assembly enacted the VFATA in 2002. 2002 Acts ch. 842. As noted in the majority opinion, the substantive words it used in the relief provision were identical to those found in the corresponding provision in the federal False Claims Act, 31 U.S.C. § 3729 et seq. (the "FCA")--specifically, 31 U.S.C. § 3730(h). Moreover, the General Assembly enacted an amendment to conform the relief provision in Code § 8.01-216.8 to the changes to 31 U.S.C. § 3730(h) after Congress amended the federal statute in the Fraud Enforcement and Recovery Act of 2009, Pub. L. No. 111-21, § 4(d), 123 Stat. 1617, 1624-25 (2009) and the Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, § 1079A(c), 124 Stat. 1376, 2079 (2010). 2011 Acts ch. 676.

The fact that the General Assembly adopted the same substantive language as the relief provision in the FCA when it originally enacted the corresponding provision in the VFATA, and amended the VFATA provision in 2011 after Congress amended the FCA provision in 2009 and 2010, indicates that the General Assembly intended state courts to construe the state statute as the federal courts had then construed the federal statute. Powers v. County School Board, 148 Va. 661, 669, 139 S.E. 262, 264 (1927) ("When the legislature comes to pass a new law or to amend an old one, it is presumed to act with full knowledge of the law as it stands bearing upon the subject with which it

20

proposes to deal.") (internal quotation marks omitted). Two federal cases construing the FCA relief provision are especially instructive here.

In Hammond v. Northland Counseling Center, Inc., 218 F.3d 886 (8th Cir. 2000), the United States Court of Appeals for the Eighth Circuit held that reinstatement may be an impractical, inappropriate remedy in light of continuing acrimony between the parties. It declined to reach the question of awarding front pay in lieu of reinstatement because the plaintiff terminated in that case "started work [for a new employer] the very next day with an equal (if not better) salary and benefits package." Id. at 892.

The United States District Court for the Eastern District of Missouri addressed the question squarely in Wilkins. There the court reiterated that reinstatement may not be appropriate in every case due to the relationship between the parties. 198 F.Supp.2d at 1091. It further found that the animosity between the plaintiff and his employer made reinstatement inappropriate in that case. It held that "Congress intended that front pay be awarded in the appropriate case to effect the express Congressional intention that a claimant under [31 U.S.C.] § 3730(h) be made whole." Id. It continued by holding that "[w]hether to order reinstatement or front pay is committed to the discretion of [the trial] court" and that where

reinstatement was inappropriate "the court will award . . . front pay." Id.

The trial court in Wilkins clearly considered front pay to be an equitable substitute for reinstatement.[1] The only factor it considered when deciding that an award of front pay was appropriate was its conclusion that reinstatement was inappropriate based on the facts of the case. 198 F.Supp.2d at 1091. This is a logical conclusion based on the plain language of the FCA, which, like the VFATA, commands that the plaintiff "shall be entitled to all relief necessary to make [him or her] whole." 31 U.S.C. § 3730(h)(1); accord Code § 8.01-216.8.

As the majority opinion recites, "[a]n award of back pay compensates plaintiffs for lost wages and benefits between the time of the discharge and the trial court judgment." Johnson, 364 F.3d at 379. Thus, an award of back pay is an award of retrospective relief, intended to restore to the plaintiff compensation he or she would have received between termination and judgment if the unlawful retaliation had not occurred.[2] Reinstatement is the corresponding award of prospective relief,

[1] The district court's judgment was affirmed "in all respects," without commentary on its front pay reasoning. Wilkins v. St. Louis Hous. Auth., 314 F.3d 927, 934 (8th Cir. 2002).

[2] The interest on the back pay, litigation costs, and attorneys' fees provided by the statutes are also retrospective relief because they too restore to the plaintiff losses he or she incurred prior to or in the course of obtaining the judgment.

22

ensuring that the plaintiff receives, after judgment, the compensation he or she would have earned from his or her employment if the unlawful retaliation had not occurred.

However, as noted in Hammond and Wilkins, reinstatement may be inappropriate due to the current relationship between the parties. In such circumstances, front pay is an equitable substitute for reinstatement, as reflected in part of the definition of front pay included in Johnson but omitted from the majority opinion: "Front pay, by contrast, is money awarded for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement. Front pay thus compensates plaintiffs for lost wages that may accrue after the conclusion of the trial." Id. (emphasis added) (internal quotation marks omitted). Both retrospective relief and prospective relief are necessary to make the plaintiff whole unless, as in Hammond, the plaintiff suffers no prospective injury.[3]   218 F.3d at 892.

To hold, as the majority opinion effectively does, that no prospective relief is necessary simply because reinstatement is

---

[3] The VFATA does not relieve the plaintiff of the general duty to mitigate his or her damages. See, e.g., Forbes v. Rapp, 269 Va. 374, 380, 611 S.E.2d 592, 595 (2005). A plaintiff terminated in an unlawful retaliatory act therefore must make reasonable efforts to obtain alternative employment. See Wilkins, 198 F.Supp.2d at 1091-92.

impractical or inappropriate due to the relationship of the parties unfairly penalizes the plaintiff alone for the deterioration in the bilateral employment relationship. More importantly, such an interpretation contravenes the spirit of the statutes.

The majority opinion cites several federal cases interpreting the relief provisions of other federal statutes and concludes that, coupled with the statutory award of double back pay, an award of front pay may result in a windfall to the plaintiff. According to the majority opinion, this would exceed the amount of damages Congress and the General Assembly intended when they contemplated making the plaintiff whole. I disagree for two reasons.

First, federal cases interpreting the relief afforded by other federal statutes are not instructive here. The General Assembly took the language of the VFATA from the FCA, not the Age Discrimination in Employment Act, the Family Medical Leave Act, or the Civil Rights Act of 1964. Moreover, Hammond and Wilkins were decided in 2000 and 2001, respectively, and thus were contemporaneous with the General Assembly's original enactment of the VFATA in 2002.

Second, the windfall concern was adequately addressed in Wilkins. There the court reduced the amount of back pay by the

amount of compensation the plaintiff received from his new employment.  198 F.Supp.2d at 1090.

For the reasons stated, I would hold that "shall" is mandatory in Code § 8.01-216.8 and that it requires a court to award both retrospective and prospective relief when the plaintiff proves both retrospective and prospective injury.  It may exercise its sound discretion to determine which form of prospective relief (reinstatement or front pay) may be appropriate considering the facts of the case.  I therefore would affirm the circuit court's judgment because, as noted above, Lewis failed to prove prospective injury.  There was no evidence that he was entitled to ongoing employment by the City at his previous level of compensation from the date of judgment forward.